[S. F. No. 977.   Department One.—April 14, 1899.]

JEANNE LOMBARDI, Executrix, et cetera, Respondent, v. CALIFORNIA STREET RAILWAY COMPANY, Appellant.

JURY—CHALLENGE OF JUROR FOR BIAS—EXHAUSTION OF PEREMPTORY CHALLENGES—REVIEW UPON APPEAL—QUESTION OF LAW. — A challenge of a juror upon the impaneling of a trial jury, for actual bias in favor of the opposite party, made after all peremptory challenges had been exhausted, will be reviewed upon appeal, and an error in overruling the challenge is ground of reversal, if the facts appear without contradiction, or in such form that but one conclusion can be legally drawn therefrom, so that the question involved becomes a question of law.

ID.—FACTS EVINCING BIAS.—The evidence of the challenged juror that he was intimately acquainted with the plaintiff, and that if the testimony was equally balanced he would give the plaintiff the benefit of it, and find in his favor, and that if the verdict was for the plaintiff, he would go to the biggest verdict, shows the existence of a state of mind in the juror evincing a bias in favor of the plaintiff; and the expression of the juror, that notwithstanding his bias, he could impartially try the case, is a mere expression of opinion, which does not affect the showing of bias.

ID.—RIGHT TO UNBIASED JURORS—COMMON-LAW RULE—EXCEPTION.—The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right of trial by jury, guaranteed by the

constitution. The common law excludes jurors upon the ground of actual bias, and the only important statutory exception to that rule relates to opinions based upon public rumor, published statements, or common notoriety, in which case the juror may show that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters submitted to him.

NEGLIGENCE—PLEADING—SPECIAL DAMAGE—EMPLOYMENT OF PLAINTIFF—SUBSTITUTE—EVIDENCE—LOSS OF PROFITS.—In an action for damages for the alleged negligence of the defendant causing an injury to the plaintiff, who was chief cook in a restaurant, and also a partner in the business, where the only special damage alleged in the' complaint, relating to the plaintiff's business, was that owing to his inability to attend to his business, he was obliged to hire his business and work done, to his damage in a specified sum, evidence relating to his loss of profits as a partner in the business is irrelevant and immaterial, and its unqualified admission and retention, without any instruction limiting its effect, is prejudicial error.

ID.—LOSS OF PROFITS NOT RECOVERABLE FOR PERSONAL INJURY—WORTH OF SERVICES.—In an action for a personal injury, the loss of profits in conducting a business involving the labor of others is not a necessary consequence of the personal injury to the plaintiff; and the extent of his recovery would be the worth of his services in the conduct of the business.

ID.—ERRONEOUS INSTRUCTION—CHARACTER AND EXTENT OF BUSINESS.—Under the pleadings in such action, an instruction that the jury, in estimating the damages, could take into account the character and extent of the business in which he was engaged, together with the incapacity caused by the injury to transacting such business, was misleading and erroneous.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. S. K. Dougherty, Judge, presiding.

The facts are stated in the opinion.

Henley & Costello, and R. R. Bigelow, for Appellants.

The court erred in not sustaining the challenge to the juror for actual bias. Appellant was entitled to an impartial jury. (*Smith v. Eames,* 3 Scam. 76; 36 Am. Dec. 521, and note; Co. Litt. 157 b.) It was error to allow evidence of the loss of profits in the plaintiff's business, under the pleadings. (*Chicago Western Div. R. R. Co. v. Klauber,* 9 Ill. App. 621; *Taylor v. Monroe,* 43 Conn. 46; *Tomlinson v. Derby,* 43 Conn. 562; *Tucker v. Parks,* 7 Colo. 62; *Pueblo v. Griffin,* 10 Colo. 367;

*Silsby v. Michigan Car Co.*, 95 Mich. 209.)   The loss of profits could not be considered as an element of damages, the recovery being confined to what plaintiff's services were worth in the business.   (*Silsby v. Michigan Car Co., supra.*)

John B. Mhoon, and Osgood Putnam, for Respondent.

Plaintiff was entitled to recover the profits lost as being part of the general damages necessarily resulting from the injury complained of.   (*Treadwell v. Whittier*, 80 Cal. 578-81;   1 Sedgwick on Measure of Damages, 7th ed., 136; 2 Sedgwick on Measure of Damages, 7th ed., 606; *Pennsylvania R. R. v. Dale*, 76 Pa. St. 47.)   The challenge to the juror for actual bias is not reviewable.   (*Trenor v. Central Pac. R. R. Co.*, 50 Cal. 234; Code Civ. Proc., sec. 603.)

HAYNES, C.—This action was prosecuted in the court be-low to recover from the defendant, a corporation, damages for personal injuries alleged to have been caused by its negligence. The plaintiff recovered judgment in the sum of fifteen hundred dollars, and defendant appeals therefrom and also from an order denying its motion for a new trial.   After the appeal was per-fected, said Cherubino Lombardi died testate, and Jeanne Lom-bardi, the duly qualified executrix of his will, was thereafter, by an order of this court, substituted as plaintiff and respondent herein.

Appellant contends for reversal:

1. Because the court should have sustained defendant's chal-lenge of the juror, Harris Schemanski, for cause; that because of the refusal of the court to sustain said challenge, defendant was obliged to challenge said juror peremptorily; that all its peremptory challenges were exhausted before the jury was com-pleted, and thereby defendant was compelled to accept jurors whom it would have otherwise challenged peremptorily.

Counsel for appellant presents the question in two ways, be-ing in doubt as to the proper practice. They first set out in their statement on motion for a new trial the examination of the juror, the ruling of the court denying their challenge, and an exception thereto, and specify said ruling as an error of law; and they also, in support of their motion for a new trial,

presented an affidavit of one of them, setting out the examination of the juror in full, the ruling of the court, an exception thereto, and stating facts tending to show that appellant was injured thereby, as above stated.

As to the question of practice it need only be said that the mode of presenting the question must depend upon circumstances. If the facts appear without contradiction, or in such form that but one conclusion can legally be drawn, it involves purely a question of law; otherwise, whether the juror is or is not qualified is a question of fact. Hence the circumstances of each case must determine the manner in which the question should be presented upon appeal. But it does not necessarily follow that because the court erred either as to the law or the fact that the judgment or order denying a new trial should be reversed, because a challenge for cause was improperly disallowed, since the constitution, while guaranteeing the right to an impartial jury, does not guarantee the right to any particular jury or juror. (*Asevado v. Orr*, 100 Cal. 293, 301.) If, therefore, it should appear, for example, that the court erroneously refused to sustain a challenge for cause, and the complaining party was thereby compelled to challenge the juror peremptorily, and it should be made to appear that a jury was secured without exhausting his peremptory challenges, he could not say that by the erroneous ruling he was compelled to submit his case to a jury that was not wholly impartial. In this case the affidavit of counsel shows that all his peremptory challenges were exhausted before the panel was filled, and that the defendant would have exercised other peremptory challenges if they had not been exhausted, and these facts stand unquestioned. If, therefore, the court erred in refusing defendant's challenge to the juror Schemanski, the judgment and order should be reversed. (*People v. Brown*, 72 Cal. 392.)

The challenge was made under subdivision 7 of section 602 of the Code of Civil Procedure. That section provides: "Challenges for cause may be taken on one or more of the following grounds: . . . . 7. The existence of a state of mind in the juror evincing enmity against or bias to or against either party."

The juror, after being questioned as to residence, et cetera, was asked: "Do you know any reason why you cannot give a

fair and impartial trial in this case? A. No, sir"; and, in reply to a question by defendant's counsel as to whether he ever had any litigation with these railroad companies, answered, "No, sir. I want to state that I know the plaintiff and his family; if that makes any difference, I won't try the case. I had some dealings with the Lombardis for years." In reply to further questions, he testified that he knew them very well for many years; that "if there was any benefit, I would give him the benefit, I suppose." And again: "Well, I could give a fair trial; only, as I say, I know the parties on the other side, and I would not like to sit on this case. Q. You would not like to have to give a verdict against them? A. Well, I would not like to have to do it; if there is anything in their favor I would give them the benefit, I suppose. Q. We want to know just why you want to be excused? A. If I sit on a case I don't want to know either of the parties; I want to be impartial on both sides. Q. But still you could be impartial? A. Well, if I am sworn in I would have to go according to the evidence. Q. Would you do it? A. Yes, sir, if I were sworn in. Q. And if you was sworn as a juror, would you go according to the evidence and the instructions of the court? A. Yes, sir. Q. And without prejudice? A. Certainly. I know his family." By counsel for defendant: "Q. Suppose the evidence is evenly balanced, do you think you would then find in favor of your friend? A. I suppose so. Q. You feel, then, do you, in sitting as a juror, that you might not be able to do entire justice? A. That is what I mean, yes, sir; if it was equally balanced I would give him the benefit of it." The juror further testified, in substance, that he did not mean he would give the plaintiff a verdict if he did not show that he had a cause of action, but if it was equal; if there was any benefit to be given, he would do it; that he was very well acquainted with the plaintiff and his family in a business way and personally, and he has dealt with us for years. The juror was then asked: "Could you hear all the evidence and weigh it carefully and justly? A. Yes, sir, I could most certainly." The juror, after repeating that his long acquaintance with the plaintiff might induce him to find in his favor, was asked by defendant's counsel: "Q. You feel, then, do you, that owing to your long intimacy with the plain-

tiff, that it might interfere with the proper discharge of your duties as a juror; is that the proposition? A. Yes, sir; it requires nine for a verdict; if four would be for five thousand dollars, and four would be for two thousand five hundred, if the verdict would be for the plaintiff, I would go to the biggest verdict. If there would be no verdict for him, I would go according to the evidence of the court; therefore I would rather be excused. Q. You would give the plaintiff the benefit of the doubt, would you? A. Yes, sir; if he was entitled to damages." In reply to questions by the court, he said that if the testimony was evenly balanced he would decide for the plaintiff, and if the testimony was against the plaintiff he would go against him.

Does this examination show "the existence of a state of mind in the juror evincing" a bias in favor of the plaintiff? If so, is this ground of challenge removed or overcome by the statement of the juror that if the evidence was against the plaintiff that he would go against him; that "he would go according to the evidence of the court," and the other similar statements?

That the juror was candid, honest, and sincere in all his statements is beyond question; and any such man, if compelled to serve as a juror, would, to the best of his ability, decide according to the evidence and the instructions of the court. When pressed with questions of that character he could only reply as he did. If he had said, "No; I will decide for my friend whatever may be the evidence," he would have shown himself to be a man who would not even try to do right. It may be that some men may be just and impartial toward an enemy, or even remove from their minds and memory and heart all the leanings, inclinations, and desires that so naturally draw them to the side of a friend. But the statute makes no exceptions. It does not add the qualification: "But if the juror will swear that he can impartially try the case, notwithstanding his bias toward his friend, or his prejudice against his enemy, the challenge shall be disallowed."

It is apparent that such an addition to the statute would make a material change; but can the court, by any line of examination it may see proper to permit, thus change it? Doubts that a juror may entertain as to the weight, effect, or credibility of the evidence are not to be resolved by the ties or persuading in-

fluence of friendship, but by the declared and impartial rules of the law. That the juror doubted his ability to impartially consider the evidence and determine which party should prevail is abundantly shown. But if the jury should find that the plaintiff was entitled to recover, still another question remained—the amount of compensation to which he should be entitled. Upon this question he announced that he "would go to the biggest verdict." Suppose the defendant had conceded its liability, and the sole question for the jury was to ascertain the amount of damages the defendant should pay; would this juror have been accepted by the court, even in the absence of a challenge? or, if challenged, would the court have hesitated to sustain it? Yet the defendant was as much entitled to an impartial jury upon this branch of the case as the other, and should not be compelled to submit its case to a juror who, before he heard the evidence, declared that if the plaintiff should be entitled to recover he "would go to the biggest verdict."

Respondent contends, however, that the evidence heard upon the trial of this challenge was conflicting, and that therefore the finding of the court cannot be disturbed. The only evidence heard upon the trial of the challenge was the testimony of the juror. As to whether the juror was biased in favor of the plaintiff there was not even the shadow of a conflict or contradiction, and the only controversy was as to whether, notwithstanding his bias, he could impartially try the case—a matter about which the juror could only express an opinion, and which could not be affected by its expression.

The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to a trial by jury guaranteed by the constitution. Upon this proposition all the authorities agree. As was said by Sir Edward Coke (1 Coke, 157, b.), in discussing the right of trial by jury, under the head of *propter affectum:* "For all which the rule of law is that he must stand indifferent as he stands unsworn."

The rule excluding jurors for actual bias in civil cases must not be confounded with the rule stated in section 1076 of the Penal Code in relation to opinions founded or based "upon public rumor, statements in public journals, or common notoriety," and which permits the acceptance of the juror "provided

it appears to the court upon his declaration, under oath or otherwise, that he can and will, notwithstanding such an opinion, act impartially and fairly upon the matters to be submitted to him." This is the only important statutory exception to the common-law rule excluding jurors upon the ground of actual bias, and was enacted because of apparent necessity.

Appellant contends that the court erred in admitting certain evidence as to the profits plaintiff was realizing from his business at the time of the accident, and in giving to the jury certain instructions on that subject.

The complaint, after alleging the cause and manner of the accident and the character of the injuries received, alleged that thereby he had suffered damage in the sum of ten thousand dollars. The complaint then proceeded as follows:

"7. That plaintiff has been for a period of three months confined and sick, owing to said injuries, and has been compelled to employ nurses and physicians during all of said time and up to the date hereof, to his damage in the sum of six hundred dollars.

"8. That plaintiff has been unable to attend to his business on account of said injury, and has been compelled thereby to hire said business and work done during all of the time since said accident, to his damage in the sum of two hundred and thirty dollars, and will be compelled to hire said work done in the future"; and prays judgment for ten thousand eight hundred and thirty dollars.

The accident occurred on March 31, 1895. It appeared from the testimony of the plaintiff, without objection, that at the date of the accident he was engaged in the restaurant business on Pine street, between Montgomery and Kearny streets, with his partner, Jules Semeria, each having an equal share in the business; that plaintiff was the chief cook, and that Semeria attended to the other part of the business; that after the accident he could not work, because he could not use his arm. The plaintiff was then asked by his counsel: "What was the income you were making from your business in March, 1895?" Defendant objected on the ground that it was not an element of damage, and therefore immaterial and irrelevant. The objection was overruled, and an exception reserved. The witness an-

swered: "About two hundred dollars per month"; and explained that that was his share of the profits after all expenses were paid.

Jules Semeria, plaintiff's partner, called by plaintiff, was asked, in chief: "Can you state what the net proceeds of this business were, on the average, for some months prior to this accident?" Defendant objected that the question was immaterial and irrelevant, and not authorized by any allegation in the complaint. The court overruled the objection, and defendant excepted. The witness answered that it was on an average four hundred dollars per month. These rulings were erroneous.

Waiving the question whether in some possible case the profits of the plaintiff's business may be shown to be an element in the computation of damages in actions of this character, when properly pleaded, it must be clear, as a general proposition, that such profits cannot be looked to in estimating the plaintiff's damages. A business, such as that conducted by the plaintiff and his partner, includes capital as well as the services of other people, as shown by the evidence, and may be conducted without the personal attention or services of either or both of the owners. The complaint alleged that plaintiff was compelled to hire another to take his place and do his work, and alleged his damage because thereof to be two hundred and thirty dollars, and that covered all the time from the date of the accident to the filing of his complaint. What he paid represented the value of his time. There is no allegation that the business suffered, or was otherwise less profitable, because of his inability to do the work he had formerly done. The authorities are not agreed as to the extent to which the evidence may go in the absence of allegations as to special damages sustained by the plaintiff, but I know of no exception to the rule that where the plaintiff has specially alleged a particular damage resulting from the injury, and the amount of such damage, that he is concluded by his allegation; and, having alleged the value of his time as the basis of estimating his pecuniary loss, he cannot give evidence of the net profits resulting from the business in which he was engaged. There are many cases in which it has been held that without a special averment the plaintiff may show that he was incapacitated from attending to "his business" or

"his ordinary business," but that such evidence was admissible because it tended to show the serious character of the injury, and not for the purpose of showing special damage. Neither in *Treadwell v. Whittier*, 80 Cal. 574, 13 Am. St. Rep. 175, nor in *Curtiss v. Rochester etc. R. R. Co.*, 20 Barb. 282, cited in the former case, did the instructions commented upon touch upon the question of the loss of profits or the extent of profits resulting from plaintiff's business, nor was that question discussed by the court in either case, although "loss of time" was considered. In *Silsby v. Michigan Car Co.*, 95 Mich. 209, it was claimed that the court below "erred in permitting the plaintiff to show as an element of damage that he had been obliged to close his shop, and further to show what the profits of his shop had been in the past." It was held that this was error. The court said: "The declaration did not count specially upon this alleged loss of profits, and the case falls within *Joslin v. Grand Rapids Ice Co.*, 50 Mich. 516; 45 Am. Rep. 54. Furthermore, the loss of profits in conducting a business involving the labor of others is not a necessary consequence of personal injury to the plaintiff. The extent of his recovery upon this ground would be what his services were worth in the conduct of such a business as he was engaged in." (Citing 3 Sutherland on Damages, 268; *Marks v. Railroad Co.*, 14 Daly, 61; *Masterton v. Mt. Vernon*, 58 N. Y. 391; *Johnson v. Manhattan Ry. Co.*, 52 Hun, 111; *Bierbach v. Goodyear Rubber Co.*, 54 Wis. 208; 41 Am. Rep. 19.) Neither in the offer or admission of this evidence, nor in the instructions to the jury, was there any limitation upon the effect of this evidence, and we must therefore assume that it was considered by the jury in estimating the damages awarded to the plaintiff.

In this connection we would refer to instruction No. 15, in which the jury were told that in estimating the damages to be assessed, while they could not take into account the wealth or poverty of the plaintiff, they could take into account the character and extent of the business in which he was engaged, together with the incapacity caused by the injury to transact such business.

Under the allegations of special damage set out in the complaint this instruction was misleading and erroneous, for reasons hereinbefore stated.

Some other exceptions to rulings upon questions of evidence were reserved by the defendant, but, as they do not go to any vital point, and may not be presented upon another trial, they need not be specially noticed.

I advise that the judgment and order appealed from be reversed.

Gray, C., and Pringle, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed.

Garoutte, J., Harrison, J., Van Dyke, J.